UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| igourmet, LLC, | : | NO. 09-bk-07837 JJT |
| Debtor | : | |
| | : | |

**AMENDED JOINT DISCLOSURE STATEMENT OF THE DEBTOR AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE
RELATING TO JOINT PLAN OF REORGANIZATION UNDER
<u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

Cohen Seglias Pallas Greenhall & Furman, PC
30 South 17th Street
Philadelphia, PA  19103
Counsel for the Debtor and Debtor-in-Possession

Keifer & Tsarouhis, LLP
21 South 9th Street – Suite 200
Allentown, PA 18102
Counsel for the Official Committee
of Unsecured Creditors

Dated:  July 19, 2010

The section headings used herein are for convenience of reference only and shall not form any part of this disclosure statement (the "Disclosure Statement") or affect its interpretation. The sections of this Disclosure Statement, set forth according to their headings and page numbers, are as follows:

| | | | |
|---|---|---|---|
| I. | **Introduction** | | 1 |
| | A. | What is Chapter 11? | 2 |
| | B. | What is a Plan of Reorganization? | 2 |
| | C. | What is a Disclosure Statement? | 2 |
| | D. | The Purpose of the Disclosure Statement | 3 |
| | E. | Notice to Holders of Claims and Equity Interests | 3 |
| | | | |
| II. | **Acceptance of the Plan** | | 4 |
| | A. | Voting Procedures | 4 |
| | B. | Confirmation Hearing and Deadline for Objections to Confirmation | 6 |
| | | | |
| III. | **Plan of Liquidation – General Overview** | | 6 |
| | | | |
| IV. | **Significant Information Concerning The Debtor** | | 8 |
| | A. | General Information | 8 |
| | B. | Administration Of The Chapter 11 Case | 9 |
| | | 1. Management | 9 |
| | | 2. Debtor's Retention of Professionals | 9 |
| | | 3. First-Day Orders | 9 |
| | | 4. Creditors Committee | 10 |
| | | 5. Claims Bar Date | 10 |
| | C. | Financial Information | 10 |
| | | | |
| V. | **The Plan** | | 10 |
| | A. | Treatment and Classification of Claims | 10 |
| | | 1. Administrative Claims | 10 |
| | | 2. Professional Compensation and Reimbursement Claims | 11 |
| | | 3. Priority Tax Claims | 11 |
| | | 4. Class 1 - Other Priority Claims | 12 |
| | | 5. Class 2 - Secured Claims | 12 |
| | | 6. Class 3 -Lease Claims | 13 |
| | | 7. Class 4 - General Unsecured Claims Of $2,500.00 Or Less | 14 |
| | | 8. Class 5 – General Unsecured Claims In Excess Of $2,500.00 | 14 |
| | | 9. Class 6 – Common Stock Equity Interests | 15 |
| | | | |
| | B. | Summary Of Other Provisions | 16 |
| | | 1. Rejection of Executory Contracts and Unexpired Leases | 16 |
| | | 2. Provisions for Treatment of Disputed Claims | 17 |
| | | 3. Method of Distribution Under the Plan | 17 |
| | | 4. Plan Administrator | 18 |
| | | 5. Retention of Jurisdiction by the Bankruptcy Court | 19 |
| | | 6. Modification of Plan | 20 |
| | | 7. Injunction | 20 |
| | | 8. Exculpation Provision | 20 |
| | | 9. Revesting of Assets | 21 |
| | | 10. Budget of Payments | 21 |
| | | 11. Dissolution of the Committee | 21 |
| | | | |
| VI. | **Confirmation of the Plan** | | 21 |
| | A. | Acceptance | 21 |

|       | B.   | Best Interests Test | 22 |
|       | C.   | Cramdown | 23 |
|       | D.   | Feasibility | 24 |

| **VII.** | **Alternatives to Confirmation and Consummation Of Plan** | | 24 |
|       | A.   | Liquidation Under Chapter 7 | 24 |
|       | B.   | Liquidation Under Chapter 11 | 25 |
|       | C.   | Alternative Plan of Reorganization | 25 |

| **VIII.** | **Effect of Confirmation of the Plan** | 25 |

| **IX** | **Risk Factors** | 25 |

| **X.** | **Conclusion** | 26 |

Case 5:09-bk-07837-JJT    Doc 194    Filed 07/19/10    Entered 07/19/10 10:38:07    Desc
Main Document    Page 3 of 29

# I.    INTRODUCTION

igourmet, LLC (the "Debtor"), along with the Official Committee of Unsecured Creditors (the "Committee") (collectively, the "Plan Proponents"), submit this Amended Joint Disclosure Statement pursuant to section 1125 of the Bankruptcy Code to holders of Claims against and Equity Interests in the Debtor in connection with (i) the solicitation of acceptances of the Joint Plan of Reorganization of the Debtor and the Official Committee of Unsecured Creditors Under Chapter 11 of the Bankruptcy Code dated May 21, 2010 (as the same may be amended, the "Plan"), and (ii) the hearing to consider confirmation of the Plan to be scheduled on _____ at _____.m. prevailing Eastern time.

On October 5, 2009, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Pennsylvania (the "Bankruptcy Court"). The Debtor's bankruptcy case has been assigned to the Honorable John J. Thomas.

On May 21, 2010, the Debtor and the Committee filed the Plan, which provided for the reorganization of its assets and the treatment of outstanding Claims against and Equity Interests in the Debtor. Pursuant to section 1125 of the Bankruptcy Code, the Debtor, along with the Committee, prepared and filed this Disclosure Statement for Bankruptcy Court approval before circulation to holders of Claims and Equity Interests in connection with the solicitation of acceptances of the Plan.[1]

The Plan contains six (6) Classes of Claims. Upon a review of the Schedules and Statements of Financial Affairs filed by the Debtor, the Classes of Claims and estimated Claim amounts are as follows: Class 1, "Other Priority Claims," has Creditors with total Claims of $12,481.85, which Creditors have been paid in full. Class 2, "Secured Claims," has Creditors with total Claims of approximately $1,696,166.00. Class 3, "Lease Claims," has Creditors with total Claims of approximately $436,099.00. Class 4, "General Unsecured Claims Of $2,500.00 Or Less," has Creditors with total Claims of approximately $67,464.79. Class 5, "General Unsecured Claims In Excess Of $2,500.00," has Creditors with total claims of approximately $4,049,484.06. Class 6, "Common Stock Equity Interests," is a Class of Equity Interest holders.

The Debtor also has recognized three (3) types of Claimants that are not in a Class. These are (a) Administrative Expense Claims; (b) Professional Compensation and Reimbursement Claims; and (c) Priority Tax Claims. The Debtor anticipates that the Administrative Claims will total approximately $2,000,000.00, the Professional Compensation and Reimbursement Claims will total approximately $100,000.00, and the Priority Tax Claims will total approximately $5,000.00. As the Debtor anticipates continuing its business operations post-Confirmation, the sources of payment of all Claims will be the Debtor's income, as well as capital contributions by equity shareholders, possible financing, and/or loans.

---

[1]    Capitalized terms used and not defined in this Disclosure Statement shall have the meanings ascribed to such terms in the Plan. Most of those capitalized terms will appear alphabetically in Article I of the Plan: "Definitions."

A.    What is Chapter 11?

Chapter 11 of the Bankruptcy Code is the principal vehicle for reorganizing business entities under the federal bankruptcy laws. Under chapter 11, a debtor is authorized to reorganize its business for the benefit of itself, its creditors and equity security holders. The filing of a petition for reorganization under chapter 11 generally provides, under section 362 of the Bankruptcy Code, for an automatic stay of attempts to collect Claims or enforce Liens that arose prior to the commencement of a debtor's chapter 11 case which otherwise interfere with the debtor's property or business. The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the commencement date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor-in-possession."

B.    What is a Plan of Reorganization?

The principal purpose of a chapter 11 case is to facilitate the formulation of a plan of reorganization which provides for the restructuring of a debtor's liabilities and the treatment of claims. A plan of reorganization may also provide for the liquidation of a debtor's assets. Here, the Plan proposed by the Debtor and the Committee provides for the reorganization of its assets and distributions to creditors in accordance with the priority scheme set forth in the Bankruptcy Code.

C.    What is a Disclosure Statement?

After a plan of reorganization has been proposed the holders of claims against, and equity interests in, a debtor that are impaired by the terms of the plan and that are entitled to distributions under the plan are entitled to vote on whether to accept the plan. The Bankruptcy Code requires disclosure of "adequate information" to all such voting creditors and equity holders by way of a disclosure statement before the plan proponent may solicit votes on the plan. The Bankruptcy Code provides that a disclosure statement containing adequate information must contain "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." *See* 11 U.S.C. § 1125(a).

The Debtor, along with the Committee, presents this Disclosure Statement to the voting holders of Allowed Claims against the Debtor in order to provide each voting holder of an Allowed Claim with sufficient information to make an informed decision as to whether to accept or reject the Plan. The Debtor and the Committee are also making this Disclosure Statement available to, among others, the known holders of Administrative Expense Claims and Priority Tax Claims in order to provide such holders with additional information to evaluate the Plan.

D.    The Purpose of the Disclosure Statement

The purpose of this Disclosure Statement is to provide the holders of Claims with important, necessary and material information about the Debtor and the Plan to enable them to make an informed judgment on the merits of accepting or rejecting the Plan. This information includes, among other matters, general background information, an overview of the Chapter 11 Case and an explanation of how the Plan will function. Accompanying this Disclosure Statement are copies of:

- the Plan;

- a notice fixing the time for the transmission of Ballots accepting or rejecting the Plan, the date and time of the hearing to consider confirmation of the Plan and related matters, and the time for filing objections to the Plan;

- a Ballot for accepting or rejecting the Plan submitted for the holders of Claims that are entitled to vote to accept or reject the Plan;

- a pre-addressed envelope; and

- a letter of transmittal from counsel to the Debtor.

E.    Notice to Holders of Claims and Equity Interests

The information contained in this Disclosure Statement is based upon financial and other information supplied by the Debtor, its advisors, and except where specifically noted, has not been subject to an audit or independent review and has not been prepared in accordance with generally accepted accounting principles. Certain of the information is by its nature forward-looking and contains estimates and assumptions that may be materially different from actual, future results. The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein, and the delivery of this Disclosure Statement shall not create an implication that there has been no change in the information contained herein since the date hereof.

This Disclosure Statement does not purport to be a complete description of the Plan, the financial data pertaining to the Debtor, the applicable provisions of the Bankruptcy Code, or other matters that may be deemed significant by the holders of Claims and Equity Interests. If any inconsistency exists between the Plan and the Disclosure Statement, the terms of the Plan are controlling. This Disclosure Statement is an attempt by the Debtor and the Committee to set forth in reasonable detail information sufficient to enable holders of Claims to make an informed judgment about the Plan. All holders of Claims and Equity Interests with questions about this Disclosure Statement and any other materials included with this Disclosure Statement are invited to address written inquiries to the Debtor, in care of counsel for the Debtor. However, no information or representation concerning the Debtor other than as set forth in this Disclosure Statement is authorized by the Debtor or the Committee, nor should it be relied upon in reaching a decision whether to vote in favor of the Plan.

3

**IMPORTANT: THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE. NO PERSON INCLUDING, WITHOUT LIMITATION, ANY CREDITOR, SHOULD CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS LEGAL, TAX OR INVESTMENT ADVICE, AND THE DEBTOR DISCLAIMS RESPONSIBILITY FOR ANY SUCH ADVICE. CONSEQUENTLY, EACH PERSON IS STRONGLY URGED TO CONSULT HIS OR HER OWN LEGAL COUNSEL, ACCOUNTANTS OR OTHER PROFESSIONAL ADVISORS AS TO ANY LEGAL, TAX, INVESTMENT AND/OR RELATED MATTERS OR CONSEQUENCES ARISING FROM OR ANCILLARY TO THE PLAN OR ANY OF ITS PROVISIONS OR ANY ACTIONS TO BE TAKEN IN FURTHERANCE THEREOF, INCLUDING, WITHOUT LIMITATION, WHETHER TO VOTE IN FAVOR OF THE PLAN.**

**SUMMARIES OF ANY PROVISIONS OF AGREEMENTS REFERRED TO IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT AND TO ALL OF THE PROVISIONS OF THE APPLICABLE AGREEMENT.**

**THE DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR, CREDITORS AND ALL PARTIES IN INTEREST.**

Nothing contained in this Disclosure Statement shall constitute an admission of any fact or liability by the Debtor or the Committee, or be admissible in any proceeding involving the Debtor or any other party.

## II. ACCEPTANCE OF THE PLAN

A.    Voting Procedures

By Order dated _____, 2010, the Bankruptcy Court approved this Disclosure Statement as containing adequate information for holders of Claims and Equity Interests in accordance with section 1125(b) of the Bankruptcy Code. However, the Bankruptcy Court has not passed upon the fairness or the merits of the Plan and approval of this Disclosure Statement should not be construed as either a guaranty of the accuracy or completeness of the information contained herein or an endorsement of the Plan by the Bankruptcy Court.

The Plan divides the holders of Claims and Equity Interests into six (6) Classes. Only Classes of Claims which are impaired by the Plan are entitled to vote. Classes whose rights are unaltered by the Plan and which therefore do not vote on the Plan are the following: Classes 1 and 3. Creditors with claims in Classes 2, 4, 5, and 6 are impaired and have the right to vote concerning the Plan.

In determining acceptance of the Plan, votes of the holders of Claims will only be counted if submitted by holders of Claims (a) which have been duly scheduled by the Debtor as undisputed, non-contingent and liquidated, or (b) who have filed a proof of Claim with the Clerk of the Bankruptcy Court, which has not been disallowed or the subject of an unresolved objection prior to the Confirmation Hearing. If you are in any way uncertain if your Claim has been correctly scheduled, you should refer to the Debtor's Schedules which are on file with the Bankruptcy Court.

**The Bankruptcy Court has fixed _____ at 5:00 p.m., prevailing Eastern Time, as the date by which holders of Claims entitled to vote may vote to accept or reject the Plan (the "Voting Deadline"). In order for your vote on the Plan to count, your Ballot must be properly completed and received at the following address by the Voting Deadline:**

> Cohen Seglias Pallas Greenhall & Furman, PC
> 30 South 17th Street
> Philadelphia, PA 19103
> Attention: Steven D. Usdin, Esquire
> Telephone : 215-564-1700

**Ballots may <u>not</u> be transmitted orally, by facsimile or by electronic mail.** In the case where more than one timely, properly completed Ballot is received, only the Ballot which bears the latest date will be counted for purposes of determining whether the relevant requirements for voting on the Plan have been satisfied. Any Ballot which is not executed by the holder of an Allowed Claim or which does not indicate an acceptance or rejection of the Plan shall be considered null and void and will not be counted. The Debtor and/or the Committee reserve the right to reject any Ballot not in proper form, the acceptance of which would, in the opinion of the Debtor, the Committee, and their respective counsel, be unlawful. The Debtor and/or the Committee further reserve the right to waive any defects or irregularities as to a particular Ballot, and/or the submission thereof.

If a Ballot is signed by an officer of a corporation or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtor and/or the Committee, must submit proper evidence satisfactory to the Debtor and/or the Committee of authority to so act.

If you have any questions about the procedure for voting, if you did not receive a Ballot and believe you are entitled to vote to accept or reject the Plan, or if you received a damaged Ballot or lost your Ballot, please call or write to the following:

> Cohen Seglias Pallas Greenhall & Furman, PC
> 30 South 17th Street
> Philadelphia, PA 19103
> Attention: Steven D. Usdin, Esquire
> Telephone: 215-564-1700
> or

Case 5:09-bk-07837-JJT    Doc 194    Filed 07/19/10    Entered 07/19/10 10:38:07    Desc
Main Document        Page 8 of 29

Keifer & Tsarouhis, LLP
21 South 9th Street – Suite 200
Allentown, PA 18102
Attention: Demetrios H. Tsarouhis, Esquire
Telephone: 610-439-1500

The vote of each holder of a Claim is important. In order for the Plan to be deemed accepted by any Class of creditors without resort to the "cramdown" provisions of the Bankruptcy Code, the Plan must receive the assent of creditors who hold at least two-thirds (2/3) in dollar amount of the Claims in such Class that vote on the Plan, and who comprise more than one-half (1/2) of the holders of Claims in such Class that vote on the Plan. In addition, at least one impaired Class, as that term is used in section 1124 of the Bankruptcy Code, determined without including any acceptances of the Plan by any "insider" (as defined in Section 101(31) of the Bankruptcy Code) must have accepted the Plan. If the requisite acceptances are received, the Plan is subsequently confirmed by the Bankruptcy Court, and the Effective Date occurs, all holders of Claims and Equity Interests will be bound by the Plan and the transactions contemplated thereby.

B.     Confirmation Hearing and Deadline for Objections to Confirmation

Pursuant to section 1128 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3017(c), the Bankruptcy Court has scheduled the Confirmation Hearing for _____ at _____ prevailing Eastern Time before the Honorable John J. Thomas, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Middle District of Pennsylvania, in Wilkes-Barre, PA. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be filed with the Clerk of the Bankruptcy Court and served so that they are RECEIVED on or before _____ at 5:00 p.m. prevailing Eastern Time by:

Cohen Seglias Pallas Greenhall & Furman, PC
30 South 17th Street
Philadelphia, PA  19103
Attention: Steven D. Usdin, Esquire
Telephone : 215-564-1700

Unless an objection is timely filed and served it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

III.    **PLAN OF REORGANIZATION  -  GENERAL OVERVIEW**

The following table summarizes the classification and treatment of Claims and Equity Interests under the Plan based upon a review by the Debtor and the Committee of Claims identified in the Schedules and a general estimate of the amount by which Allowed Claims may ultimately exceed the amounts identified in the Schedules. For certain Classes of Claims, the actual amounts of Allowed Claims could exceed or could be less than the amounts estimated by

6

the Debtor in calculating the estimated recoveries set forth in the table below. Accordingly, no representation can be or is being made with respect to whether the estimated percentage recoveries shown below will actually be realized by the holders of Allowed Claims in any particular Class. In addition, the Debtor has attempted to make certain estimates in respect of Administrative Expense Claims and other Claims which are inherently subject to uncertainty. No representation or warranty as to their accuracy is being made. Unless otherwise noted, the estimates are as of the Commencement Date.

| Class | Type of Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| | Administrative Expense Claims | Unimpaired; paid in full in Cash on the later of allowance date and Effective Date or in accordance with the terms and conditions relating to obligations incu in the ordinary course of business during pendency of the Chapter 11 Case<br>**Estimated Amount**: $2,000,000.00<br>**Estimated Recovery**: $2,000,000.00 | 100% |
| | Professional Compensation and Reimbursement Claims | Unimpaired; paid in full in Cash (i) on the earlier of the Effective Date or the date such Order is approved<br>**Estimated Amount**: $100,000.00<br>**Estimated Recovery**: $100,000.00 | 100% |
| | Priority Tax Claims | Unimpaired; except to the extent paid prior to the Effective Date or agrees to different treatment, at the option of the Debtors, either paid in full, in Cash, on the later of allowance date and Effective Date or paid over a five-year period from the date of assessment as provided in section 1129(a)(9)(C) of the Bankruptcy Code with simple interest not to exceed 6% per annum<br>**Estimated Amount**: $5,000.00<br>**Estimated Recovery**: $5,000.00 | 100% |
| 1 | Other Priority Claims | Unimpaired; except to the extent paid prior to the Effective Date or agrees to different treatment, paid in full, in Cash on the later of the allowance date and the Effective Date<br>**Estimated Amount**: Paid<br>**Estimated Recovery**: Paid | 100% |
| 2 | Secured Claims | Impaired; except to the extent paid prior to the Effective Date or agrees to different treatment, (i) Paid in full, in Cash, plus interest required to be paid under section 506(b) of the Bankruptcy Code, or (ii) fully and completely satisfied by delivery of the Collateral securing the Secured Claim and payment of any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code<br>**Estimated Amount**: in excess of $2,141,518.68<br>**Estimated Recovery**: $2,141,518.68 | Less than 100% (entitled to vote) |

7

| Class | Type of Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| 3 | Lease Claims | Unimpaired; the Debtor will either assume and cure the Leases, or will reject the Leases and remit the leased property to the Lease Claimant<br>**Estimated Amount**: $171,546.65<br>**Estimated Recovery**: $171,546.65 | 100% |
| 4 | General Unsecured Claims Of $2,500.00 Or Less | Impaired; creditors shall receive 12% of their Allowed Claims<br>**Estimated Amount**: $67,464.79<br>**Estimated Recovery**: $8,095.76 | 12% (entitled to vote) |
| 5 | General Unsecured Claims In Excess Of $2,500.00 | Impaired; creditors shall receive 5% - 10% of their Allowed Claims<br>**Estimated Amount**: $4,049,484.06<br>**Estimated Recovery**: at least $202,474.20 | 5% -10% (entitled to vote) |
| 6 | Common Stock Equity Interests | Impaired; equity interests in the reorganized Debtor shall be maintained upon the contribution of a proportional sum as set forth in Exhibit B to this Disclosure Statement<br>**Estimated Amount**: 0<br>**Estimated Recovery**: 0 | 0 (entitled to vote) |

## IV.   SIGNIFICANT INFORMATION CONCERNING THE DEBTOR

### A.   General Information

igourmet, LLC (the "Debtor") is a business debtor. The Debtor is in the business of selling gourmet food products worldwide, including fresh cheeses, fresh and preserved meats, and related food and gift items via internet sales, and as of the Commencement Date employed approximately fifty employees. Historically, the Debtor's annual sales have been in the range of $10 million annually. Additionally, the Debtor's business relies on the holiday season to turn a profit. Due to the nationwide economic downturn, the Debtor's business faltered. The Debtor was confident that if its debts were held in abeyance through the holiday season, it would have sufficient capital to prepare a payment plan to repay all of its secured lenders in full, reorganize its debt, and continue its business.

The Debtor has been in business for approximately ten (10) years. It moved to its current location in West Pittston, Pennsylvania in 2005 in order to reduce expenses and consolidate operations. As of the Commencement Date, the Debtor employed approximately 50 people, but because of the seasonal nature of its business, during the holiday season that number expands to approximately 135 employees. The average sale made by the Debtor is $55.00 per order, and includes a variety of gourmet food items and gift basket assortments. The Debtor is one of the largest employers in the West Pittston area and ships its products worldwide.

The Debtor's goal in filing its Petition was to continue its operations through the 2009 holiday season, and at that point to reassess whether the business could continue profitably. After the holiday season, the Debtor reviewed its income and has determined that it is able to continue its business operations while paying the Allowed Claims of its Secured Creditors, a

dividend to its General Unsecured Creditors, as well as retaining those Leases that are deemed necessary for its business operations.

B.     Administration Of The Chapter 11 Case

The Debtor filed its Petition for Relief on October 5, 2009 (the "Commencement Date").

1.     Management

The Debtor is a New York limited liability company with its principal place of business in West Pittston, Luzerne County, Pennsylvania. As of this writing, Spencer Chesman is President of the Debtor.

2.     Debtor's Retention of Professionals

The Debtor sought and obtained Bankruptcy Court approval to retain Cohen, Seglias, Pallas, Greenhall, & Furman, PC as bankruptcy counsel to assist it in connection with operational matters and the overall reorganization process, and Selznick & Company, LLP as its accountant. The Bankruptcy Court-approved professionals retained by the Debtor will file applications seeking compensation and reimbursement of expenses.

3.     First-Day Orders

Immediately after the Commencement Date, the Debtor obtained a series of orders from the Bankruptcy Court designed to minimize any disruption to its business operations and to facilitate the orderly reorganization effort. The Bankruptcy Court entered Orders authorizing the Debtor to, among other things, (1) pay prepetition wages and benefits to employees and (2) granting the temporary use of its pre-petition bank accounts. The approval of these motions was a critical first step to minimizing, among other things, the personal hardship that employees would have suffered if employee-related obligations were not paid.

The Bankruptcy Court also entered an Order (A) Authorizing Interim and Permanent Use of Cash Collateral and Granting Adequate Protection; (B) Authorizing the Debtor to Obtain Interim and Final Postpetition Financing; (C) Scheduling Final Hearing and Prescribing Form and Manner of Notice; and (D) Granting Related Relief (the "Cash Collateral Motion") relating to assets liened by UPS Capital Business Services ("UPSCBC"). The Bankruptcy Court Order permitted the Debtor to borrow $150,000.00 as debtor-in-possession financing ("DIP Financing") from Umami Holdings, LLC, a Pennsylvania limited liability company ("Umami") in order to procure inventory for the upcoming holiday season. As part of the approval of the Cash Collateral Motion, the Bankruptcy Court also allowed Umami to be paid in full ahead of the Debtor's other secured creditors on or before December 31, 2009. Umami has now been repaid in full for the DIP Financing.

Further pursuant to the Cash Collateral Motion, UPSCBC was granted a replacement lien in the Debtor's cash collateral to the extent of cash used by the Debtor and with the same priority as UPSCBC had before the Commencement Date. The Debtor was given permission to provide UPSCBC with adequate protection payments from November 1, 2009 through February 1, 2011

9

on the first day of each month as follows: November 1, 2009 and December 1, 2009, payments of $6,600.00; January 1, 2010 and February 1, 2010, payments of $13,200.00; March 1, 2010 through December 1, 2010, payments of $6,600.00; January 1, 2011 and February 1, 2011, payments of $13,200.00, and if no Plan were confirmed by February 1, 2011 then the parties would renegotiate or file a motion to determine adequate protection thereafter. This arrangement was set forth in the Final Order relating to Cash Collateral, entered by the Bankruptcy Court on November 2, 2009.

        4.      <u>Creditors' Committee</u>

An Official Committee of Unsecured Creditors (the "Committee") was appointed by the Court on December 28, 2009. The Committee is comprised of three creditors: CheeseWorks, Inc., c/o EG Capital Group, LLC; Wald Imports, Ltd.; and WRH Industries, Ltd. The law firm of Keifer & Tsarouhis, LLP was appointed as Counsel for the Committee on February 10, 2010.

        5.      <u>Bar Date</u>

On October 29, 2009, the Bankruptcy Court entered an order establishing the general deadline for filing proofs of Claim against the Debtor. The deadline established by the Bankruptcy Court was December 15, 2009 for all Claims.

C.      <u>Financial Information</u>

The Debtor filed its Schedules and Statement of Financial Affairs with the Bankruptcy Court on October 20, 2009 at Docket Numbers 41 through 51. These documents may be examined during normal business hours in the Office of the Clerk of the Bankruptcy Court, or online if you are a registered recipient of Court Documents.

**V.      THE PLAN**

The following is a summary of the Plan, and is qualified in its entirety by the full text of the Plan, a copy of which accompanies this Disclosure Statement. The Plan, if confirmed by the Bankruptcy Court, will be binding upon the Debtor, the Committee, and all creditors and holders of Equity Interests. All creditors and holders of Equity Interests are urged to read the Plan carefully.

**A.      <u>Treatment and Classification of Claims</u>**

The Plan provides for six (6) Classes of Claims and Equity Interests and also provides for the payment of non-classified Claims (the holders of which do not vote) - those for administrative expense claims and taxes. The Classes and distributions, if any, to be made to each Class (and non-classified Claims) under the Plan are described below.

        1.      <u>Administrative Expense Claims.</u>  Except to the extent that any Entity entitled to payment of an Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to

such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor shall be paid in full and performed by the Debtor in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

The Debtor estimates there will be $2,000,000.00 of Administrative Claims which have been paid by the Debtor in the normal course of its business.

2.     <u>Professional Compensation and Reimbursement Claims</u>. All Entities seeking an award by the Bankruptcy Court of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date under sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date which is 45 days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court and (b) if granted such an award by the Bankruptcy Court, be paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court, (i) on the later of the Effective Date and the date upon which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim, Debtor, and the Committee, or (iii) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court.

The Debtor estimates there will be compensation Claims of $100,000.00.

3.     <u>Priority Tax Claims</u>. Except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, at the option of the Debtor, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, or (b) in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, equal annual Cash payments commencing on the first anniversary of the Effective Date in an aggregate amount equal to such Allowed Priority Tax Claim, together with simple interest on any outstanding balance from the Effective Date at a fixed annual rate of 6.0%, over a period not exceeding six years after the date of assessment of such Allowed Priority Tax Claim, or upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim with deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim; provided, however, that the Debtor shall have the right to pay any Allowed Priority Tax Claim, or any remaining balance, in full, at any time on or after the Effective Date, without premium or penalty. Based on a review of the Debtor's Schedules, the Debtor projects the maximum amount of Priority Tax Claims to be approximately $5,000.00.

4.     <u>Class 1 – Other Priority Claims</u>

The Plan provides that except to the extent that a holder of an Allowed Other Priority Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other Priority Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date and the date such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable.

The Debtor states there were claims of $12,481.85 that have already been approved by the Court and paid by the Debtor.

5.     <u>Class 2 –Secured Claims</u>

Except to the extent that a holder of a Secured Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of a Secured Claim shall, in full and complete settlement, satisfaction and discharge of its Other Secured Claim, at the option of the Debtor and/or the Committee, (i) receive Cash in an amount equal to such Secured Claim, including any interest on such Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Secured Claim becomes a Secured Claim, or as soon thereafter as is practicable, or (ii) receive the Collateral securing its Secured Claim and any interest on the Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Secured Claim becomes a Secured Claim, or as soon thereafter as is practicable.

The Debtor has two (2) holders of Secured Claims: UPSCBC and Strategic Funding Source, Inc. ("Strategic"). The Debtor's obligation to UPSCBC is guaranteed by <u>Spencer Chesman and Jessica Chesman individually.</u>  The Debtor has entered into stipulations with both UPSCBC and Strategic.


On October 8, 2009, the Court entered a first interim Cash Collateral Order relating to the Debtor's secured obligation to UPSCBC. This Order provided, among other things, that the Debtor gave UPSCBC a security interest in its cash collateral, and as to non-cash collateral the Debtor would provide adequate protection payments to UPSCBC as follows: November 1, 2009 and December 1, 2009, payments of $6,600.00; January 1, 2010 and February 1, 2010, payments of $13,200.00; March 1, 2010 through December 1, 2010, payments of $6,600.00; January 1, 2011 and February 1, 2011, payments of $13,200.00, and if no Plan were confirmed by February 1, 2011 then the parties would renegotiate or file a motion to determine adequate protection thereafter.  This arrangement was set forth in the Final Order relating to Cash Collateral, entered by the Bankruptcy Court on November 2, 2009.

Upon confirmation, adequate protection payments pursuant to the Court's Final Cash Collateral Order shall cease, and UPSCBC shall be paid as follows: monthly on the first day of each month through December 1, 2010, payments of $3,500.00; January 1, 2011, a payment of $35,000.00; thereafter, monthly payments of $3,500.00 through December 1, 2011; a payment of $54,000.00 on January 1, 2012; thereafter, monthly payments of $3,500.00 through December 1,

12

2012; a payment of $64,000.00 on January 1, 2013; thereafter, monthly payments of $5,500.00 through December 1, 2013; a payment of $64,000.00 on January 1, 2014; thereafter, monthly payments of $6,000.00 through December 1, 2014; a payment of $74,000.00 on January 1, 2015; thereafter, monthly payments of $6,500.00 through December 1, 2015; a payment of $82,000.00 on January 1, 2016; thereafter, monthly payments of $7,000.00 through December 1, 2016; a payment of $84,000.00 on January 1, 2017; thereafter, monthly payments of $7,000.00 through December 1, 2017; a payment of $96,000.00 on January 1, 2018; and thereafter, monthly payments of $7,000.00 through December 1, 2018; a payment of $96,000.00 on January 1, 2019; thereafter, monthly payments of $8,000.00 through December 1, 2019; a payment of $106,000.00 on January 1, 2020; thereafter, payments of $8,000.00 through December 1, 2020; a payment of $116,000.00 on January 1, 2021; thereafter, monthly payments of $8,000.00 through June 1, 2021; and a final balloon payment of approximately $400,000.00 on July 1, 2021. Interest on these payments will be calculated at a rate of prime plus 1.75%. The balloon payment may be adjusted based upon a change in the interest rate over the course of the repayment schedule. On the Commencement Date, UPSCBC was owed $1,568,647.00. The prepetition liens and security interests of UPSCBC shall continue with respect to the like property of the post-Confirmation Debtor, with no filing or other action being required to create or perfect such liens and security interests. Consistent with the payment terms outlined above, UPSCBC will receive significant return on the debt; however, their claim will be impaired.

The Debtor and Strategic entered into a Stipulation of Settlement (the "Stipulation") relating to the secured claim of Strategic. The Stipulation provided, in relevant part, that 9% of the funds being held by Strategic at the time of the Stipulation would be released to Strategic, and that going forward Strategic would receive 1.75% of gross receipts of the Debtor until such time as a Plan was confirmed. Upon approval of the Plan, the remittance rate will be raised to 2.25%. Remittances will be received via automated clearing house withdrawal. The Debtor anticipates that the secured claim of Strategic will be paid by December of 2010. On the Commencement Date, Strategic was owed $127,518.68.

Due to the Debtor's having made adequate protection payments, some portion of Strategic's secured claim will be eliminated by virtue of the Debtor having paid adequate protection payments to Strategic.

6.     <u>Class 3 – Lease Claims</u>

The Plan provides for the Debtor to satisfy the claims of the Lease Claimants by either (a) assuming the Lease and curing any arrearage, or (b) rejecting the Lease. At this time, the Debtor anticipates assuming all current outstanding Leases, and curing all arrearages.

The Debtor has successfully agreed to a modification of an existing Lease Claim with Marlin. The terms of this Lease Claim has changed such that the Debtor has been able to retain the leased property under a revised payment structure. The changes to this Lease is as follows:

The Debtor's total obligation to Marlin before the payment figure was revised totaled $69,218.75, in payments of $2,820.59 through October of 2011 with a final payment of $2,172.59 in November of 2011. With the revised payment structure, the Debtor will pay Marlin as follows: from May 1, 2010 through December 1, 2010, monthly payments of $750.00; January

1, 2011, a payment of $6,000.00; thereafter, monthly payments of $750.00 through December 1, 2011; a payment of $11,000.00 on January 1, 2012; thereafter, monthly payments of $750.00 through December 1, 2012; a payment of $11,000.00 on January 1, 2013. Upon payment in full pursuant to the new terms made consistent with this paragraph, the personal guarantees of Spencer Chesman and Fred Chesman shall be released.

Based on a review of the Debtor's Schedules, the Debtor projects that the maximum amount of Lease Claims to be assumed will be approximately $436,099.00. Further information regarding treatment of Lease Claims is provided in the Plan, and such information is incorporated by reference herein.

      7.     Class 4 – General Unsecured Claims Of $2,500.00 Or Less

The holder of an Allowed General Unsecured Claim Of $2,500.00 Or Less shall receive, in full and complete settlement, satisfaction and discharge of such Allowed Claim, a total dividend of 12% of the Allowed Claim. The payment shall be on the First Distribution Date, a total dividend of 12% of the Allowed Claim. Any Holder of a Class 5 Claim may elect to reduce its claim to $2,500.00 and participate in the distribution of 12% for Class 4.

The Debtor has analyzed its Schedules filed with the Bankruptcy Court in terms of the universe of General Unsecured Claims. Assuming that any Claim listed as disputed in the Schedules and for which no proof of Claim was filed is disallowed, and without the benefit of the claims reconciliation process having played itself out, there are approximately $67,464.79 in General Unsecured Claims Of $2,500.00 Or Less scheduled against the Debtor.

8.     Class 5 – General Unsecured Claims In Excess Of $2,500.00

The holder of an Allowed General Unsecured Claim In Excess Of $2,500.00 shall receive, in full and complete settlement, satisfaction and discharge of such Allowed Claim, a total dividend of 5% - 10% of the Allowed Claim as follows. In January of 2011, the Debtor shall pay to all Class 5 Creditors 0.25% of their Allowed Claims. Subsequently, payments will be made as follows:

|  | January 2012 | January 2013 | January 2014 | January 2015 | January 2016 |
|---|---|---|---|---|---|
| Up to $6.99M gross annual sales | 0.75% | 1.00% | 1.00% | 1.00% | 1.00% |
| $7M - $7.99M gross annual sales | 0.75% | 1.25% | 1.25% | 1.25% | 1.25% |
| $8M - $8.99M gross annual sales | 0.75% | 1.50% | 1.50% | 1.50% | 1.50% |
| $9M - $9.99M gross annual sales | 0.75% | 1.75% | 1.75% | 1.75% | 1.75% |
| $10M - $10.99M gross annual sales | 0.75% | 2.00% | 2.00% | 2.00% | 2.00% |
| $11M+ gross annual sales | 0.75% | 2.25% | 2.25% | 2.25% | 2.25% |

14

The Distributions shall be computed upon a sliding scale based on the Debtor's performance, using the gross annual sales of each preceding calendar year (from January 1 through December 31 of each year).

For the year ending December 31, 2015, if the Debtor has or exceeds $11 million in gross annual sales in the 2012, 2013, 2014 and 2015 calendar years, an additional payment will be made in January of 2016 to allow the holders of Class 5 Claims to receive a total distribution of 10% under the Plan.

Any holder of a Class 5 Claim may elect to reduce its claim to $2,500.00 and be treated as a member of Class 4 for the distribution of 12%.

The Debtor has analyzed its Schedules filed with the Bankruptcy Court in terms of the universe of General Unsecured Claims. Assuming that any Claim listed as disputed in the Schedules and for which no proof of Claim was filed is disallowed, and without the benefit of the claims reconciliation process having played itself out, there are approximately $4,049,484.06 in General Unsecured Claims In Excess Of $2,500.00 scheduled against the Debtor. Attached to this Disclosure Statement as Exhibit "A" is a projection of the Debtor's cash flow and budget through the life of the Plan, showing the anticipated payments to Class 5 through the life of the Plan.

Included in the Debtor's Schedules of General Unsecured Claims are claims asserted by the holders of certain promissory notes and similar instruments that were issued by the Debtor prior to the Commencement Date. The Debtor and the Committee are investigating, among other things, whether such claims may be subordinated under applicable law and/or whether other causes of action may exist against the holders of such instruments. All such causes of action that may exist against such parties are expressly reserved by the Debtor, the Committee, the estate, and the Plan Administrator.

9.    Class 6 – Common Stock Equity Interests

Class 6 is comprised of approximately 66 shareholders holding Common Stock Equity Interests in the Debtor. A list of these Common Stock Equity Interest holders is affixed hereto as Exhibit "B." To retain a current equity interest in the Debtor, each holder of a Common Stock Equity Interest shall contribute funds to the Debtor for the Debtor's reorganization on or before the Effective Date. Spencer Chesman, having a shareholder interest of 47.89% of the outstanding shares, shall contribute $143,939.56 to the Debtor for its reorganization pursuant to this Plan on the Effective Date. If all Class 6 Common Stock Equity Interest Holders contribute their pro rata shares to the Debtor, the Debtor shall receive an additional $156,000.00 for a total of approximately $300,000.00 for use as working capital. Each holder of a Common Stock Equity Interest shall contribute a proportionate sum, as set forth in Exhibit B, to retain the holder's Common Stock Equity Interest in the reorganized Debtor. Failure to contribute the full amount as set forth in Exhibit B on or before the Effective Date shall cause the individual holder's Common Stock Equity Interest in the Debtor to be cancelled. If a Common Stock Equity Interest is cancelled for failure to make the contribution required as set forth above, the remaining Common Stock Equity Interest holders who did make the required contribution as set

15

forth in Exhibit B, shall receive his or her ownership in the reorganized Debtor on a pro rata basis as calculated by determining the per cent of shares of stock remaining as holders of Common Stock Equity Interests who contribute, and awarding each such contributing shareholder a proportionate share of the Common Stock Equity Interests that were not contributed to the reorganized Debtor. The holders of Allowed Common Stock Equity Interests shall not receive any distributions on account of such Equity Interests. Notwithstanding the foregoing, because the value of the Debtor's assets is believed to be less than the total value of its debts and liabilities, it is not anticipated that the holders of Allowed Common Stock Equity Interests will receive any distributions on account of such Equity Interests. The Equity Interest holders shall not recover any dividends unless and until the Class 4 and Class 5 General Unsecured Creditors have received their full distribution pursuant to Sections 4.4 and 4.5 of the Plan.

In addition, any unexpired options or warrants to purchase Common Stock Equity Interests in the Debtor are deleted and terminated.

## B.    <u>Summary Of Other Provisions</u>

The Plan also contains various other provisions, including those pertaining to the following:

1.      <u>Rejection of Executory Contracts and Unexpired Leases</u>.  The Plan specifies that, to the extent that any holder of a Lease Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of a Lease Claim shall, in full and complete settlement, satisfaction and discharge of its Lease Claim, at the option of the Debtor:  (i) receive Cash in an amount equal to its regular Lease payment for such Lease Claim, assumed pursuant to the terms of such Lease or pursuant to terms as agreed between the Lessor and the Debtor, plus any sums owed prepetition pursuant to the Lease to cure the Lease shall be paid in twenty-four (24) equal monthly payments to each holder of a Lease Claim, starting within thirty (30) days after the Effective Date and proceeding thereafter on the same day of each month as the first payment, or (ii) receive the Collateral securing its Claim.  Any interest on such Lease Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, in twenty-four (24) equal monthly payments to each holder of a Lease Claim, starting within thirty (30) days after the Effective Date and proceeding thereafter on the same day of each month as the first payment.

To the extent that the Debtor elects to assume any Lease and cure any arrearage relating to that Lease, the Lease Creditor shall retain the Liens (or replacement Liens), if any, securing its Lease Claim as of the Effective Date until any distribution(s) shall have been made to such holder hereunder, at which time such Liens shall be deemed null and void and shall be unenforceable for all purposes.  As to any holder of a Lease Claim that has been paid in full prior to the Effective Date, such Liens shall be deemed null and void and shall be unenforceable for all purposes.  As to any Lease that the Debtor rejects, the Lease Creditor and the Plan Administrator shall arrange for the return of the leased item and the nullification of any document evidencing indebtedness on the part of the Debtor.  The Lease Creditor shall then be treated as a Class 4 or Class 5 General Unsecured Creditor, as appropriate, for any deficiency.

16

2. <u>Provisions for Treatment of Disputed Claims</u>. Except as to applications for allowance of compensation and reimbursement of expenses under sections 330, 331 and 503 of the Bankruptcy Code, the Debtor and the Committee shall, on and after the Effective Date, have the exclusive right to make and file objections to Administrative Expense Claims and Claims. On and after the Effective Date, the Debtor, with the consent of the Committee, shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Administrative Expense Claims and Claims and compromise, settle or otherwise resolve Disputed Administrative Expense Claims and Disputed Claims without approval of the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, the Debtor shall file all objections to Administrative Expense Claims that are the subject of proofs of claim or requests for payment filed with the Bankruptcy Court (other than applications for allowances of compensation and reimbursement of expenses) and Claims and serve such objections upon the holder of the Administrative Expense Claim or Claim as to which the objection is made as soon as is practicable, but in no event later than thirty (30) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

3. <u>Method of Distribution Under the Plan</u>. Pursuant to the Plan, distributions shall be made by the Plan Administrator in accordance with the priorities established therein. At the option of the Plan Administrator, any Cash payment to be made pursuant to the Plan may be made by check or wire transfer.

Distributions to the holders of Allowed Claims will be made as follows: (i) at the address set forth in the Schedules unless superseded by the address set forth on the proofs of Claim filed by holders of Claims, or (ii) at the address set forth in any written notice of address change delivered to the Plan Administrator after the date of filing of any proof of Claim. If any holder's distribution is returned as undeliverable, the Plan Administrator will take reasonable steps to attempt to deliver the distribution to the holder of the Allowed Claim. Any holder of an Allowed Claim that does not advise the Plan Administrator that it has not received its, his or her distribution within ninety (90) days after the date of attempted distribution will have its, his or her Claim for such undeliverable distribution discharged and will be forever barred from asserting any such Claim against the Debtor, its property, or the Committee. Distributions must be negotiated within ninety (90) days of the date of distribution. Any distributions which are undeliverable and unclaimed or have not been cashed within the time periods set forth above shall become available for distribution to the holders of Allowed Claims in accordance with the Plan and the holder of an unclaimed or undeliverable distribution shall not be entitled to any further distribution under the Plan.

The Allowed Claims of the General Unsecured Creditors shall be paid as follows:

(a) <u>General Unsecured Claims Of $2,500.00 Or Less.</u> On the First Distribution Date, a total dividend of 12% of the Allowed Claim shall be paid. Any holder of a General Unsecured Claim In Excess Of $2,500.00 may elect to reduce its claim to $2,500.00 and be treated a member of Class 4 for the distribution of 12%.

(b) <u>General Unsecured Claims In Excess Of $2,500.00.</u> The Class 5 Creditors shall be paid Distributions of their Allowed Claims as set forth in the chart below, starting in January of 2011. The minimum total distribution shall be 5% of Allowed Claims. In January of 2011,

17

the Debtor shall pay the first distribution to all creditors of 0.25% of their Allowed Claims. Subsequently, payments will be made as follows:

|  | January 2012 | January 2013 | January 2014 | January 2015 | January 2016 |
|---|---|---|---|---|---|
| Up to $6.99M gross annual sales | 0.75% | 1.00% | 1.00% | 1.00% | 1.00% |
| $7M - $7.99M gross annual sales | 0.75% | 1.25% | 1.25% | 1.25% | 1.25% |
| $8M - $8.99M gross annual sales | 0.75% | 1.50% | 1.50% | 1.50% | 1.50% |
| $9M - $9.99M gross annual sales | 0.75% | 1.75% | 1.75% | 1.75% | 1.75% |
| $10M - $10.99M gross annual sales | 0.75% | 2.00% | 2.00% | 2.00% | 2.00% |
| $11M+ gross annual sales | 0.75% | 2.25% | 2.25% | 2.25% | 2.25% |

The Distributions shall be based upon a sliding scale as set forth in Paragraph V(A)(8), *supra*. For the year ending December 31, 2015, if the Debtor has or exceeds $11 million in gross annual sales in the 2012, 2013, and 2014 calendar years, an additional payment will be made in January of 2016 to allow the holders of Class 5 Claims to receive a total distribution of 10% under the Plan.

For any year from 2012 through 2015 in which gross annual sales exceed $11,000,000.00, an additional payment will be made in January of 2016 to allow the holders of Class 5 Claims to receive a total distribution of 10% under the Plan.

4. <u>Plan Administrator</u>. Spencer Chesman, President of the Debtor, shall serve as the Plan Administrator without Bond. The Plan Administrator shall act in the same fiduciary capacity as applicable to a board of directors and its officers; those officers and directors who served in such capacity immediately prior to the Effective Date shall be replaced by the Plan Administrator on the Effective Date. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtor. All distributions to be made under the Plan shall be made by the Plan Administrator. The duties and powers of the Plan Administrator shall include, but not be limited to, the following:

(i) To exercise all power and authority that may be necessary to implement the Plan, commence and prosecute all proceedings that may be commenced and take all actions that may be taken by any officer, director or shareholder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders, including consummating the Plan;

(ii) To maintain all bank accounts, make distributions and take other actions consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Debtor;

(iii) To take all steps reasonably necessary and practicable to continue the corporate existence of the Debtor;

18

(iv)     To make decisions regarding the retention or engagement of professionals or other persons by the post-Effective Date Debtor, and to pay, without court approval, all reasonable fees and expenses of the Debtor and its estate accruing from and after the Effective Date;

(v)     To take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable in connection with the administration and consummation of the Plan; and

(vi)     To exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court.

5.     <u>Retention of Jurisdiction by the Bankruptcy Court</u>.  Pursuant to the Plan, the Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of any Claims resulting therefrom;

(b)     To hear and determine any and all adversary proceedings, applications and contested matters, even if filed after confirmation of the Plan;

(c)     To hear and determine any objections to Administrative Expense Claims, Claims or Equity Interests;

(d)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(e)     To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(f)     To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)     To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(h)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(i)     To recover all assets of the Debtor and property of the Debtor's estate, wherever located;

(j)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

19

(k)     To hear and determine any requests by the Debtor to sell any asset pursuant to section 363 of the Bankruptcy Code;

(l)     To hear any other matter not inconsistent with the Bankruptcy Code; and

(m)     To enter a final decree closing the Chapter 11 Case.

6.     <u>Modification of the Plan</u>.  Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Plan Proponents at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified by the Debtor at any time after the Confirmation Date and before substantial consummation, with the consent of the Committee, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122, 1123, and 1127 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.  Prior to the Effective Date, the Debtor, with the consent of the Committee, may make appropriate technical non-material modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of holders of Claims or Equity Interests.

7.     <u>Injunction</u>.  *Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against the Debtor and/or its estate, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim, (c) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtor or against the property of the Debtor, (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor, and (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims and Causes of Action which are extinguished, dismissed or released pursuant to the Plan.  Such injunction shall extend to successors of the Debtor and its property and interests in property.  None of the foregoing shall enjoin the rights of holders of Claims or Equity Interests that arise under the Plan.*

8.     <u>Exculpation Provision</u>.  Neither the Plan Proponents, nor any of their respective members, officers, directors, employees, advisors, professionals or agents shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, or any pre-petition acts or omissions to the

maximum extent permissible under applicable law, except for willful misconduct or gross negligence, and, in all respects, the Plan Proponents, and each of their respective members, officers, directors, employees, advisors, professionals and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan

9.     Revesting of Assets.  The Plan provides that from and after the Effective Date, the Debtor, with the consent of the Committee, may, without further Bankruptcy Court approval, use, sell, transfer, assign, abandon or otherwise dispose of any of the Debtor's remaining assets for the purpose of reorganizing the Debtor's estate and converting such assets to Cash, for the purpose of making distributions and fully consummating the Plan.

10.    Budget of Payments.  Attached to this Disclosure Statement as Exhibit "A" is the projected cash flow and budget of the Debtor, showing the anticipated payments through the life of the Plan.

11.    Dissolution of the Committee.  Upon the occurrence of the Effective Date, the Committee shall dissolve.  Neither the Committee, nor any of their respective members, officers, directors, employees, advisors, professionals or agents shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Committee, and each of their respective members, officers, directors, employees, advisors, professionals and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## VI.     **CONFIRMATION OF THE PLAN**

### A.     **Acceptance**

To confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning the Plan and the Debtor, including that: (i) the Plan classifies Claims and Equity Interests in a permissible manner; (ii) the Plan complies with applicable provisions of the Bankruptcy Code; (iii) the Debtor complies with applicable provisions of the Bankruptcy Code; (iv) the Plan has been accepted by the requisite votes of holders of Claims (except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code); (v) the Plan has been proposed in good faith and not by any means forbidden by law; (vi) the disclosure required by section 1125 of the Bankruptcy Code has been made; (vii) the Plan is feasible and confirmation will likely not be followed by the liquidation or the need for further financial reorganization of the Debtor, unless such liquidation or reorganization is proposed in the Plan (as is the case here); (viii) the Plan is in the "best interests" of all holders of Claims in an impaired Class by providing to such holders on account of their Claims property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a chapter 7 liquidation, unless each holder of a Claim in such Class has accepted the Plan; (ix) all fees and expenses payable under 28 U.S.C. Section 1930 (fees owing to the bankruptcy clerk and the United States Trustee) have been paid or the Plan provides for their payment on the Effective Date; and (x) if applicable, the Plan provides for the continuation after the Effective Date of all

retiree benefits, as defined under section 1114 of the Bankruptcy Code, at the level established prior to confirmation for the duration of the period that the Debtor has obligated itself to provide such benefits.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims in that Class, but for that purpose counts only those who actually vote to accept or reject the plan. Thus, a class will have voted to accept the Plan if two-thirds (2/3) in amount and a majority in number actually voting cast their Ballots in favor of acceptance.

## B.      Best Interests Test

Notwithstanding acceptance of the Plan by the requisite majorities of the holders of Claims in Classes entitled to vote, in order to confirm the Plan, the Bankruptcy Court must independently determine that the Plan is in the best interests of all Classes impaired by the Plan. In order to confirm the Plan, the Bankruptcy Court must find that the Plan provides to each Entity who rejects the Plan a recovery which has a value at least equal to the value of the distribution which each such Entity would receive if all of the Debtor's assets which are property of its estate were liquidated under chapter 7 of the Bankruptcy Code.

To calculate what creditors would recover in a chapter 7 liquidation, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Debtor's remaining assets if the Chapter 11 Case was converted to chapter 7 and the assets were liquidated by a trustee in bankruptcy. Upon liquidation, the potential distribution available to creditors may be reduced (a) to the extent of the value of the Collateral securing the Claims of secured creditors, and (b) by the costs of liquidation under chapter 7, which costs would include the compensation of a trustee, disposition expenses, including possible transfer taxes which may not be payable under chapter 11, all unpaid expenses incurred by the Debtor during the Chapter 11 Case (such as compensation of professionals), litigation costs (if any), and Claims arising during the pendency of the Chapter 11 Case and the chapter 7 liquidation proceedings. There may be included chapter 11 Administrative Expense Claims for the failure of the Debtor to fulfill post-petition contracts, if any. These Claims would have to be paid in full out of the liquidation proceeds before the balance, if any, would be made available to pay unsecured creditors. Moreover, any proceeds available for distribution would be reduced by the cost attributable to the time value of money resulting from what is likely to be a more protracted proceeding.

The Debtor has evaluated the range of returns to holders of Claims under the Plan, and has compared that anticipated return with what the Debtor believes will be realized if a forced liquidation occurs under chapter 7 of the Bankruptcy Code. Based on this evaluation and the assumptions set forth in the liquidation analysis affixed hereto as Exhibit "C" to this Disclosure Statement, *the Debtor believes that unsecured creditors will obtain a recovery from the estate under the Plan of a value in excess of what otherwise would be available if the remaining assets of the Debtor were liquidated and distribution made pursuant to chapter 7 of the Bankruptcy Code.* Put differently, it seems much more likely that the assets available for distribution,

22

virtually all of which are already in liquid form, will only be diminished in the context of a liquidation under chapter 7 than under the Plan.

The liquidation analysis for the Debtor contains estimates of the amount of Claims that may ultimately be Allowed Claims. These estimates are based solely upon the Debtor's preliminary review of Claims filed and the Debtor's books and records. No order has been entered to date estimating or otherwise fixing the amount of Claims at the projected amounts set forth in the liquidation analysis. The estimates set forth therein should not be relied upon for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of Allowed Claims under the Plan.

## C.     Cramdown

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has voted to accept the plan. These "cramdown" provisions are set forth in Section 1129(b) of the Bankruptcy Code.

The Plan may be confirmed pursuant to the cramdown provisions if, in addition to satisfying other requirements of section 1129 of the Bankruptcy Code, the Plan: (i) "does not discriminate unfairly"; and (ii) "is fair and equitable with respect to each Class of claims or equity interests that is impaired under, and has not accepted, the Plan." As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have meanings unique to bankruptcy law.

The requirement that a plan "not discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank. A plan does not discriminate unfairly if claims or interests in different classes but with similar priorities and characteristics receive or retain property of a similar value under a plan. By establishing separate Classes for the holders of each type of Claim and Equity Interest and by treating each holder of a Claim and Equity Interest in each Class the same, the Debtor, along with the Committee, submits that the Plan does not "discriminate unfairly" with respect to any Class of Claims or Equity Interests.

The "fair and equitable" standard, also known as the "absolute priority rule", has different meanings with respect to secured and unsecured claims. With respect to secured claims, for a plan to be fair and equitable, the plan may provide, among other things, that the holder of such claims retain the liens securing those claims to the extent of the allowed amount of such claims, and that such holder receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property. Alternatively, a plan may provide for the realization by the holders of secured claims of the indubitable equivalent of such claims. Here, the Plan provides that the holders of all types of Secured Claims receive that which they are entitled to under section 1129 of the Bankruptcy Code by virtue of the treatment under the Plan which contemplates the payment by the Debtor of Cash in an amount sufficient to satisfy any Allowed Secured Claims or the surrender of the Collateral securing any such Allowed Secured Claims.

Case 5:09-bk-07837-JJT    Doc 194    Filed 07/19/10    Entered 07/19/10 10:38:07    Desc
Main Document       Page 26 of 29

With respect to a class of unsecured creditors, a plan can be fair and equitable if it provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date, equal to the allowed amount of the claim, or if it provides that the holder of a claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

With respect to a class of equity interests, a plan can be fair and equitable if (i) each holder of an equity interest will receive or retain under the Plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan. The Plan's treatment of Common Stock Equity Interests comports with the Bankruptcy Code's fair and equitable requirement in this regard. More specifically, under the Plan the holders of Allowed Common Stock Equity Interests may not receive any distributions on account of such Equity Interests, except to the extent that Available Cash exceeds the amount necessary to satisfy all Allowed Claims plus Postpetition Interest thereon.

Pursuant to Section 1129(b) of the Bankruptcy Code, the Debtor and the Committee intend to request confirmation of the Plan in the event that all of the applicable requirements of Section 1129(a), other than Section 1129(a)(8), are met.

## D.    Feasibility

The Bankruptcy Code permits a plan to be confirmed if it is not likely to be followed by liquidation or the need for further financial reorganization unless such liquidation or reorganization is proposed in the Plan. The Plan provides for the continuation of the Debtor's business without the expectation that it will be followed by a liquidation and, therefore, the Debtor and the Committee believe that the Plan complies with the financial feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

## VII.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, the Debtor's alternatives include (i) liquidation of the Debtor under chapter 7 of the Bankruptcy Code, (ii) liquidation of the Debtor under chapter 11 of the Bankruptcy Code, and (iii) the preparation and presentation of an alternative plan of reorganization.

## A.    Liquidation Under Chapter 7

If no chapter 11 plan can be confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed to liquidate the few remaining assets of the Debtor. A discussion of the anticipated effect that a chapter 7 liquidation would have on the recoveries of holders of Claims is set forth above. The

24

Debtor believes that liquidation under chapter 7 would result in, among other things, no distributions being made to creditors other than those provided in the Plan because of, among other things, additional administrative expenses attendant to the appointment of a trustee, the trustee's employment of professionals, and the undersecured position of UPSCBC.

## B.   Liquidation Under Chapter 11

A debtor may also form a liquidating plan of reorganization under chapter 11 of the Bankruptcy Code. A liquidation under this chapter would allow the creditors of the Debtor to avoid certain costs, such as the compensation of a trustee, disposition expenses (including possible transfer taxes), all unpaid expenses incurred by the Debtor during the Chapter 11 Case, litigation costs (if any), and Claims arising during the pendency of the Chapter 11 Case and the chapter 7 liquidation proceedings. However, a liquidation under chapter 11 of the Bankruptcy Code will not permit the Debtor to continue its business activities. The Debtor is in a position to continue its business activities going forward, and liquidation will defeat the purpose of the Chapter 11 Case.

## C.   Alternative Plan of Reorganization

If the Plan is not confirmed, the Debtor, the Committee, or any other party in interest if the Debtor's exclusivity period has expired or has been terminated, could attempt to formulate a different plan of reorganization. Because the Plan as proposed calls for the reorganization of the Debtor's assets and the distribution of Cash in accordance with the priorities of the Bankruptcy Code, it is difficult to conceive of an alternative plan of reorganization. The Plan, in the opinion of the Debtor, represents the best alternative to protect the interests of creditors and parties in interest.

## VIII.   EFFECT OF CONFIRMATION OF THE PLAN

In accordance with section 1141 of the Bankruptcy Code, the provisions of the Plan, if confirmed, will bind the Debtor and all creditors and holders of Equity Interests. The Plan binds the holders of Claims and Equity Interests, whether or not the Claim or Equity Interest is impaired under the Plan, and whether or not the holder of such Claim or Equity Interest has accepted the Plan.

## IX.   RISK FACTORS

The distributions and recoveries set forth in this Disclosure Statement are based on the Debtor's estimates of Allowed Claims. The Debtor projects that the Claims asserted against it will be resolved and reduced to an amount that approximates its estimates and may seek an order or orders from the Bankruptcy Court estimating the dollar amount of certain Allowed and Disputed Claims. There can be no assurance that such assumptions will prove accurate. In addition, if and to the extent that the Debtor has underestimated the amount of Allowed Claims or reserves for Disputed Claims, the Debtor could be required to redirect Cash to such disputed Cash reserves, resulting in a potential dilution of Available Cash. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its

implementation. The Debtor reserves the right to object to the amount and classification of any Claim. Thus, the estimates set forth in this Disclosure Statement and the Reorganization Analysis affixed hereto cannot be relied upon by any creditor whose Claim is subject to a successful objection. Any such creditor may not receive the estimated distributions set forth herein.

## X.   <u>CONCLUSION</u>

For all of the reasons set forth in this Disclosure Statement, the Debtor and the Committee believe that confirmation and consummation of the Plan is preferable to all other alternatives. **THUS, THE DEBTOR AND THE COMMITTEE BELIEVE THAT THE PLAN IS IN THE BEST INTERESTS OF ALL HOLDERS OF CLAIMS AND URGES ALL SUCH HOLDERS THAT ARE ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN.**

Respectfully submitted,

igourmet, LLC

By:    ***s/Spencer Chesman***
         Spencer Chesman, President


Cohen Seglias Pallas Greenhall & Furman, PC
By:    ***s/Steven D. Usdin, Esquire (PA ID No. 36381)***
Steven D. Usdin, Esquire
30 South 17th Street
Philadelphia, PA 19103
215-564-1700
Counsel for the Debtor and
Debtor-in-Possession


Cheese Works, Inc.

By:    ***s/Thomas Nakashian***
         Thomas Nakashian, Chairperson


Keifer & Tsarouhis, LLP
By:    ***/s/ David C. Schattenstein, Esquire (PA ID No.14892)***
David C. Schattenstein, Esquire
By:    ***/s/ Demetrios H. Tsarouhis, Esquire (PA ID No.88513)***
Demetrios H. Tsarouhis, Esquire
21 South 9th Street – Suite 200
Allentown, PA 18102
610-439-1500
Counsel for the Official Committee of Unsecured Creditors

Dated: July 19, 2010

#1028524-v1 03254-0002